Slip Op. 17-96

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **THE GERSON COMPANY,** <br><br>                             Plaintiff, <br><br> v. <br><br> **UNITED STATES**, <br><br>                             Defendant. | **Before: Timothy C. Stanceu, Chief Judge** <br><br> **Court No. 11-00225** |

# OPINION

[Determining, upon cross-motions for summary judgment, the tariff classification of certain imported candle-like articles containing light-emitting diodes]

Date: August 2, 2017

*Ralph H. Sheppard*, Meeks, Sheppard, Leo & Pillsbury, of Fairfield, CT, for plaintiff The Gerson Company.  With him on the brief was *Robert J. Leo*.

*Amy M. Rubin*, Assistant Director, International Trade Field Office, Civil Division, U.S. Department of Justice, of New York, NY, for defendant United States.  With her on the brief were *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, and *Hardeep K. Josan*, Trial Attorney.  Of counsel on the brief was *Sheryl A. French*, Office of Assistant Chief Counsel, U.S. Customs and Border Protection.

Stanceu, Chief Judge:  In this action to contest the denials of its administrative protests by U.S. Customs and Border Protection ("Customs"), plaintiff The Gerson Company ("Gerson") contests the tariff classification Customs determined for certain imported articles that resemble candles and that use as a source of illumination internal, battery-powered light-emitting diodes.

Before the court are cross motions for summary judgment.  The court awards summary judgment in favor of defendant United States.

## I. BACKGROUND

Gerson was the importer of record on 27 entries of the merchandise at issue in this litigation.  Summons (June 30, 2011), ECF No. 1.  The entries were made during the period of January 6 through October 16, 2009, at the Port of Kansas City, Missouri.  *Id*.  Customs liquidated the entries between November 20, 2009 and September 3, 2010, inclusive, and Gerson contested the liquidations by filing four protests, on May 12, June 8, August 31, and September 14, 2010, respectively.  *Id.*  Customs denied all four protests on January 4, 2011, and this action followed.

Plaintiff moved for summary judgment in July 2016; defendant filed its cross motion the following November.  Pl.'s Br. and Exs. in Supp. of its Mot. for Summ. J. (July 15, 2016), ECF No. 43-2 ("Pl.'s Mot."); Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. (Nov. 4, 2016), ECF No. 53 ("Def.'s Mot.").[1]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(a) (2006), according to which the court has jurisdiction over an action brought under section 515 of the Tariff Act of 1930 ("Tariff Act"), *as amended*, 19 U.S.C. § 1515 (2006), to contest a denial of a protest by Customs.  In such an action, the court proceeds *de novo*.  *See* Customs Courts Act of 1980 § 301, 28 U.S.C. § 2640(a)(1) (2006).

---

[1] The court held a telephonic conference with the parties on July 18, 2017, during which plaintiff waived its prior request for oral argument.

B.  Description of the Merchandise

The facts as stated in this Opinion are not in dispute between the parties.  *See* Agreed Statement of Facts (July 15, 2016), ECF No. 43-1; Def.'s Resp. to Pl.'s Agreed Statement of Facts (Nov. 4, 2016), ECF No. 53-1.

The merchandise at issue consists of various models of what Gerson terms "candles" and "tea lights."[2]  Pl.'s Mot. 5.  Each of these articles is comprised principally of translucent wax or plastic and is made to resemble a style of an ordinary candle (such as a votive, pillar, taper, or tea light).  *Id.*  Instead of providing illumination by means of a wick and the combustion of candle wax, as does an ordinary candle, each of these articles provides illumination by means of an internal semiconductor that is a "light-emitting diode," or "LED," powered by a battery contained within the article.  *Id.*  Catalogue illustrations of the articles show that when the LED is energized by the battery, the illuminated article resembles a lit candle.  *See* Pl.'s Mot., Ex. 3c, ECF No. 43-7.  The illustrations also show that Gerson's articles provide decoration as well as illumination and that some are in holiday themes, including Christmas.  *See id.*

C.  Tariff Classification under the General Rules of Interpretation, HTSUS

Tariff classification is determined according to the General Rules of Interpretation ("GRIs"), and, if applicable, the Additional U.S. Rules of Interpretation ("ARIs"), of the Harmonized Tariff Schedule of the United States ("HTSUS").  GRI 1 directs that tariff classification, in the first instance, "be determined according to the terms of the headings and any

---

[2] A "tea light" is "a small round candle in a disposable metal container."  *Dictionary.com*, http://www.dictionary.com/browse/tea-light (last visited July 25, 2017).

relative section or chapter notes." GRI 1, HTSUS (2009).[3]  Once merchandise is determined to be correctly classified under a particular heading of the HTSUS, a court then looks to the HTSUS subheadings to determine the correct classification of the merchandise in question. GRI 6, HTSUS; *see Orlando Food Corp. v. United States*, 140 F.3d 1437, 1440 (Fed. Cir. 1998).

Unless there is evidence of "contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (*"La Crosse"*) (quoting *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375 (Fed. Cir. 1999)).  Although not binding law, the Explanatory Notes ("ENs") to the Harmonized Commodity Description and Coding System ("Harmonized System" or "HS"), maintained by the World Customs Organization, "may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision."[4] *Degussa Corp. v. United States*, 508 F.3d 1044, 1047 (Fed. Cir. 2007).

In cases involving a disputed tariff classification, the court first considers whether "the government's classification is correct, both independently and in comparison with the importer's alternative." *Jarvis Clark Co. v. United States*, 733 F.2d 873, 878 (Fed. Cir. 1984).  Plaintiff has the burden of showing the government's determined classification to be incorrect. *Id*. at 876.  If plaintiff meets that burden, the court has an independent duty to arrive at "the *correct* result, by whatever procedure is best suited to the case at hand." *Id.* at 878.

---

[3] Because all entries of the merchandise at issue occurred in 2009, all citations herein to the Harmonized Tariff Schedule of the United States ("HTSUS") are to the 2009 version of the HTSUS.

[4] All citations to the World Customs Organization's Harmonized Commodity Description and Coding System ("HS") Explanatory Notes ("ENs") contained herein are to the 2007 version.

D.  Summary Judgment under USCIT Rule 56

The court will award summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).  In a tariff classification dispute, "summary judgment is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998).  In ruling on a summary judgment motion, the court credits the non-moving party's evidence and draws all inferences in that party's favor.  *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("*Anderson*")).  A genuine factual dispute is one potentially affecting the outcome under the governing law.  *Anderson*, 477 U.S. at 248.

In this case, the court concludes that there are no disputed facts material to the tariff classification of Gerson's merchandise.

E.  Contentions of the Parties

Upon liquidation, Customs classified the imported articles in subheading 9405.40.80, HTSUS ("Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; . . . : Other electric lamps and lighting fittings: Other"), subject to duty at 3.9% *ad val*.  In its cross motion for summary judgment, defendant argues that the classification as determined by Customs upon liquidation was correct.  Def.'s Mot. 3.

Before the court, plaintiff's primary claim is that the merchandise is properly classified in subheading 8543.70.70, HTSUS ("Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; . . . :  Other machines and apparatus:  Electric luminescent lamps"), subject to duty at 2% *ad val*.  Pl.'s Mot. 1.

Plaintiff claims in the alternative that the articles at issue are classifiable in subheading 8543.70.96, HTSUS ("Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; . . . : Other machines and apparatus: Other: Other: Other"), subject to duty at 2.6% *ad val*. *Id.*

As a third alternative, plaintiff claims classification in subheading 8541.40.20, HTSUS (" . . . light-emitting diodes: light-emitting diodes (LED's)"), free of duty. *Id.*

As a fourth alternative, plaintiff argues for classification in subheading 8541.50.00 ("Diodes, transistors and similar semiconductor devices; . . . : Other semiconductor devices"), free of duty. *Id.*

F. Application of GRI 1, HTSUS, to Determine the Correct Heading of the HTSUS

Because GRI 1, HTSUS directs that classification be determined, in the first instance, "according to the terms of the headings and any relative section or chapter notes," the court first considers the candidate headings identified by the parties and any additional headings that might merit consideration. The candidate HTSUS headings, shown in numerical order and with the heading terms relevant to the classification issue presented by this case, are as follows:

    8541    Diodes, transistors and similar semiconductor devices; . . . light-emitting diodes; . . .

    8543    Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; . . .

    9405    Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; . . .

As GRI 1, HTSUS requires, the court also considers "relative section or chapter notes." Considering these notes and the HTSUS headings in general, the court concludes that there are

no other plausible candidate headings.[5]  Therefore, the court will analyze three candidate headings, two of which are in chapter 85 and one of which is in chapter 94, HTSUS.

Gerson's articles, not being designed to be attached to another article or surface (as is a lighting fixture), are not described by the term "lighting fitting" but fall within common definitions of the word "lamp."[6]  Note 1(f) to Chapter 94, HTSUS provides that "[t]his chapter [94] does not cover: . . . Lamps or lighting fittings of chapter 85."  The threshold question, therefore, is whether Gerson's "candles" and "tea lights" fall within the scope of

---

[5] Certain of Gerson's articles have decorative characteristics, and plaintiff's exhibit, for example, shows that many of them have holiday or festive themes (e.g., Christmas and Halloween).  Pl.'s Br. and Exs. in Supp. of its Mot. for Summ. J., Ex. 3c (July 15, 2016), ECF No. 43-7.  Neither party advocates classification under heading 9505, HTSUS ("Festive, carnival or other entertainment articles . . ."), and the court concludes that classification thereunder would be contrary to the intent of the drafters of the HS, who intended that durable articles such as Christmas tree lights ("electric garlands"), even though performing a decorative as well as an illuminating function, would fall outside the scope of that heading and within the scope of HS heading 94.05.  *See* EN 94.05 (instructing that "electric garlands," including those fitted with fancy lamps for carnival or entertainment purposes or for decorating Christmas trees, are within the scope of HS heading 94.05); *see also* EN 85.05.  In contrast, certain articles that may be described as decorations "which in view of their intended use are generally made of non-durable material" such as paper or metal foil, are classified under HS heading 95.05, even if containing illumination.  EN 95.05.  Both EN 94.05 and EN 95.05 give as an example of the latter class of goods "Chinese lanterns."
    The court also eliminates from consideration heading 3406, HTSUS ("Candles, tapers and the like") because the articles in question are not "candles" within the common meaning of that term.  *See*, e.g., *Merriam Webster*, www.merriam-webster.com/dictionary/candle (last visited July 25, 2017) ("a usually molded or dipped mass of wax or tallow containing a wick that may be burned (as to give light, heat, or scent or for celebration or votive purposes)").

[6] *See*, e.g, *Merriam Webster*, www.merriam-webster.com/dictionary/lamp (last visited July 25, 2017) ("a: *any of various devices for producing light* or sometimes heat: *such as* (1): a vessel with a wick for burning an inflammable liquid (such as oil) to produce light (2): a glass bulb or tube that emits light produced by electricity (such as an incandescent light bulb or fluorescent lamp) b: a decorative appliance housing a lamp that is usually covered by a shade") (emphasis added).

chapter 85, HTSUS. Further to the discussion above, the two headings within the chapter that are relevant to this issue are headings 8541 and 8543, HTSUS.

### 1. Gerson's Articles Are Not within the Scope of Heading 8541, HTSUS

The uncontested facts pertaining to the physical and functional characteristics of the merchandise require the court to eliminate from consideration heading 8541, HTSUS, which contains the terms "semiconductor devices" and "light-emitting diodes." Each article at issue contains a light-emitting diode as a source of illumination, but the article as a whole contains other major components as well and, therefore, does not conform to a common or commercial definition of the term "semiconductor device" or the term "light-emitting diode."[7]

Gerson takes issue with what it describes as the position of Customs that heading 8541, HTSUS is limited to discrete semiconductors. Pl.'s Mot. 15. Gerson argues, specifically, that "this Customs attempt to limit heading 8541 to discrete semiconductors has been unequivocally rejected by the Court of International Trade in *ABB Power Transmission v. United States*, 19 CIT 1044, 896 F. Supp. 1279 (1995)." Pl.'s Mot. 15. In support of its argument that the terms of heading 8541, HTSUS describe its goods, Gerson relies in part on note 8 to chapter 85, HTSUS, which provides that "[f]or the classification of the articles defined in this note, headings 8541 and 8542 shall take precedence over any other heading in the Nomenclature, except in the case of heading 8523, which might cover them by reference to, in particular, their function."

---

[7] Note 8(a) to chapter 85, HTSUS provides that the term "diodes, transistors and other semiconductor devices," which appears in the article description for heading 8541, refers to "semiconductor devices the operation of which depends on variations in resistivity on the application of an electric field." The HTSUS does not define "light-emitting diode," but the Explanatory Note to heading 85.41 states that "**[l]ight emitting diodes**, or **electroluminescent diodes**, (based, *inter alia*, on gallium arsenide or gallium phosphide) are devices which convert electric energy into visible, infra-red or ultra-violet rays. They are used, e.g., for displaying or transmitting data in control systems." EN 85.41(C).

Note 8 to ch. 85, HTSUS.  The court is not convinced by these arguments.  *ABB Power Transmission* is not on point, having involved the tariff classification of a module consisting of six thyristors, heatsinks, voltage divider circuits and other circuitry that was a component of a larger system (a direct current conversion station for power generation).  19 CIT at 1044-45, 896 F. Supp. at 1280.  The court concluded that the assembled module functioned as a single thyristor, a semiconductor.  *Id.* at 1049, 896 F. Supp. at 1283.  Gerson's articles are stand-alone items, not components within larger systems, and they perform both decorative and illuminating functions that are beyond those of a semiconductor device or LED, whether or not "discrete." Gerson's reliance on note 8 to chapter 85, HTSUS is also unavailing because its goods are not "articles defined in this note."  *See* note 8 to ch. 85, HTSUS.

2.  Gerson's Articles Are Classified under Heading 9405, HTSUS, Not Heading 8543, HTSUS

It is plausible to read the pertinent terms of heading 8543, HTSUS as encompassing the merchandise in question.  *See* heading 8543, HTSUS ("Electrical machines and apparatus, having individual functions, not specified or included elsewhere in this chapter; . . .").  As does any electric lamp, each Gerson article depends for illumination on the operation of electricity.  Also, it can be argued that these articles have "individual functions."

The qualification "not specified or included elsewhere in this chapter [85]" contained within the article description for heading 8543, HTSUS would be met by Gerson's articles.  Although the headings of chapter 85 other than heading 8543 include articles that may be described as "lamps," Gerson's articles are not described by any of these other headings.  *See* HTSUS headings 8512 (electrical lighting equipment for cycles or motor vehicles); 8513 (certain portable electric lamps such as flashlights); 8530 (certain electrical signaling equipment); 8531 (visual signaling apparatus other than those of heading 8512 or 8530); 8539 (electric filament

(i.e., incandescent) or discharge (i.e., fluorescent) lamps; arc lamps); the aforementioned 8541 (light-emitting diodes); and heading 8545 (lamp carbons). Therefore, were Gerson's merchandise properly held to fall within the scope of heading 8543, HTSUS as an "electrical machine" or an "electrical apparatus," then consideration of heading 9405, HTSUS, would be precluded by operation of note 1(f) to chapter 94, HTSUS. Moreover, because heading 9405, HTSUS is limited to lamps and lighting fittings "not elsewhere specified or included," Gerson's articles could not be classified thereunder if they fall within the scope of heading 8543, HTSUS. *See* heading 9405, HTSUS ("Lamps and lighting fittings . . . not elsewhere specified *or included*" (emphasis added)). Gerson makes this argument (among others). Pl.'s Mot. 15.

If Gerson's proffered interpretation of the scope of heading 8543, HTSUS were adopted, Gerson would have met its burden of establishing that the government's classification under heading 9405, HTSUS is incorrect. Concluding to the contrary, the court rejects Gerson's broad interpretation of the scope of heading 8543, HTSUS and its position classifying the articles at issue thereunder. The court concludes instead that heading 9405, HTSUS is the correct heading for Gerson's articles. In brief summary, these articles are within a class or kind of electric lamps that are self-contained, i.e., independently used. In addition, they have a decorative as well as an illuminating function. The class or kind of goods to which Gerson's articles belong falls generally within chapter 94, under heading 9405, HTSUS, not within chapter 85, under heading 8543, HTSUS.

Chapter 85, HTSUS includes within it certain electric "lamps" that are excluded from chapter 94 by operation of note 1(f) to chapter 94. Such lamps necessarily include those within the article descriptions of HTSUS headings 8512, 8513, 8530, 8531, 8539, and 8541, each of which the court discussed previously, and they also include the "lamp carbons" of heading 8545,

HTSUS, whether or not considered to be "lamps."  As to the proper heading for Gerson's articles, the precise question presented is whether the term "electrical machines and apparatus, having individual functions," as used in the article description for heading 8543, HTSUS was intended to refer to the entire class or kind of goods comprised of electric lamps, and thereby, as a result of note 1(f) to chapter 94, exclude that entire class or kind from the scope of chapter 94, HTSUS in general and from the scope of heading 9405, HTSUS in particular.

The term "electrical machines and apparatus" as used in heading 8543, HTSUS is not free of ambiguity.  Terms in a tariff statute are to be given their "common and commercial" meaning, *La Crosse*, 723 F.3d at 1358.  While any electric lamp (or electric lighting fitting) may be described as an "electrical machine" or an "electrical apparatus" in a hyper-technical sense, the term "electrical machines and apparatus" is not necessarily read so broadly, in the common and ordinary sense, as to include the class or kind of goods exemplified by Gerson's articles, which are stand-alone items designed to provide decoration and illumination in the household.  Resolving the ambiguity requires the court to give meaning to the context imparted by other, related HTSUS provisions.  In this case, reading the term "electrical machines and apparatus" as used in heading 8543, HTSUS so broadly as to include *all* electric lamps and lighting fittings produces an anomalous result with respect to the relative scopes of the two HTSUS headings, 8543 and 9405, under which the latter would be confined to *non*-electric lamps and lighting fittings.  Such a reading would impose a specific, and drastic, limitation on the scope of heading 9405, HTSUS that the article description for that heading does not express or suggest.  Moreover, this interpretation would be contrary to the intent of the drafters of the Harmonized System, as expressed in various HS Explanatory Notes.

Referring specifically to the inclusion within HS heading 94.05 of "[l]amps and lighting fittings, not elsewhere specified or included," EN 94.05 instructs that "[l]amps and lighting fittings of this group can . . . use *any* source of light (candles, oil, petrol, paraffin (or kerosene), gas, acetylene, *electricity*, etc.)." EN 94.05 (emphasis added).  A wide variety of examples is given; *see* EN 94.05(I)(1) ("This heading covers, in particular: . . . **Lamps and lighting fittings normally used for the illumination of rooms**, e.g.: hanging lamps; bowl lamps; ceiling lamps; chandeliers; wall lamps; standard lamps; table lamps; bedside lamps; desk lamps; night lamps . . .").  The examples provided of lamps for the illumination of rooms necessarily would include those with decorative as well as illuminating functions.

The general Explanatory Note to HS Chapter 85 lends further support to the conclusion that many electric lamps and lighting fittings fall within HS heading 94.05 and outside of HS chapter 85.  This EN clarifies that chapter 85 includes "[c]ertain electrical goods not generally used independently, but designed to play a particular role as components, in electrical equipment, e.g., . . . lamps (heading 85.39) . . . ." EN 85(A)(6).  This reference to the "lamps" of HS heading 85.39 would encompass what are commonly referred to as "light bulbs," including incandescent ("filament") and fluorescent ("discharge") light bulbs.  *See* HS heading 85.39 ("Electrical filament or discharge lamps, including sealed beam lamp units and ultra-violet or infra-red lamps; arc-lamps").  Similarly, chapter 85 also includes electric lighting and signaling equipment for motor vehicles (HS heading 85.12).  The HS drafters adopted as a general organizing principle that chapter 85 includes "lamps" (including those commonly referred to as "bulbs") that are not used independently, and those that are used independently were as a general matter left to fall within chapter 94, in HS heading 94.05.  An exception to the general organizing principle is HS heading 85.13, which contains certain "portable" lamps, some of

which, such as flashlights, are used "independently." Nevertheless, when the applicable heading terms and legal notes are construed according to the clarification provided by the Explanatory Notes, it is apparent that the HS drafters intended for the class or kind of goods comprised of self-contained, independently-used furnishings such as electric household lamps and lighting fittings to be classified under HS heading 94.05 and not under HS heading 85.43. In reaching this conclusion, the court attaches significance to the instruction in EN 94.05 that heading 94.05 "covers in particular: . . . **Lamps and lighting fittings normally used for the illumination of rooms**." EN 94.05(I)(1). The lamps and lighting fittings specified by the headings of HS chapter 85 either are not designed for, or are not designed exclusively or specifically for, interior illumination. *See* ENs for HS headings 85.12 (motor vehicle lighting and signaling equipment), 85.13 (certain portable electric lamps, including flashlights), 85.30 (certain electrical signaling equipment), 85.31 (other signaling equipment), 85.39 (electric filament (including incandescent) or discharge (including fluorescent) lamps), 85.41 (light-emitting diodes), and 85.45 (carbons for use in arc lamps and electric resistance lamps).

As the court discussed above, EN 85.39 uses the term "electric filament or discharge lamps" to refer to various classes of goods that commonly may be described as electric light bulbs. EN 85.39 is also instructive as to the delineation between the scope of that heading and that of HS heading 94.05. EN 85.39 defines "electric light lamps" as consisting of "glass or quartz containers, of various shapes, containing the necessary elements for converting electrical energy into light rays (including infra-red or ultra violet rays)." EN 85.39. The sentence in the EN following the above-quoted definition is as follows: "The heading covers *all* electric light *lamps*, whether or not specially designed for particular uses (including flashlight discharge lamps)." *Id.* (emphasis added). This sentence could be read broadly as to refer to the household

lamps and lighting fittings of heading 94.05. Nevertheless, to interpret it so broadly would be to read it mistakenly, out of the context provided by this and related ENs, which point to HS heading 94.05, not to HS chapter 85, for lamps that are self-contained and, in the words of the EN to chapter 85, "used independently." In short, the "lamps" that may be described as light bulbs and similar such electrical devices not used independently are classified generally within HS chapter 85, and those that are used independently are classified generally within HS chapter 94.[8]

The intent of the drafters to adopt the general organizing principle the court has identified is further demonstrated by EN 85.43: "This heading covers all electrical appliances and apparatus, **not falling** in any other heading of this Chapter, **nor covered more specifically** by a heading of any other Chapter of the Nomenclature . . . ." HS heading 85.43 does not refer to lamps or lighting fittings but only generally to electrical machines and apparatus; HS heading 94.05, in contrast, specifically provides for lamps and lighting fittings and encompasses them provided they are not elsewhere specified or included.

In summary, when considered together, the ENs relating to HS chapter 85, to certain headings therein, and to HS heading 94.05 support the conclusion that goods such as Gerson's articles, which are self-contained, i.e., "independently used," lamps suitable for household use as illuminating and decorative articles, were intended by the Harmonized System drafters to fall within HS heading 94.05, not HS heading 85.43.

---

[8] The lamps and lighting fittings of heading 9405, HTSUS would be classified under that heading even if imported without bulbs (in the parlance of the ENs, "lamps") or, if battery-operated, batteries. *See* GRI 2, HTSUS. Analogously, heading 9405, HTSUS includes candelabras, *see* EN 94.05(I)(6), but it does not include candles (heading 3406, HTSUS).

In arguing for classification of its articles under heading 8543, HTSUS, Gerson argues that EN 85.43(16) gives as an example of goods of that heading "**Electro-luminescent devices**, generally in strips, plates or panels, and based on electro-luminescent substances (e.g., zinc sulphide) placed between two layers of conductive material." Pl.'s Mot. 8 (quoting EN 85.43). In that regard, Gerson also directs the court's attention to the presence under the heading of subheading 8543.70.70, HTSUS ("Other machines and apparatus: Electric luminescent lamps"). *Id.* at 12. Gerson argues that its articles are electric, are luminescent, and are lamps; it submits, therefore, that heading 8543, HTSUS is the correct heading and 8543.70.70, HTSUS is the correct subheading. The court, of course, first considers the scope of the heading itself and will not construe a subheading to have the effect of enlarging the scope of a heading, as that would be inconsistent with the requirement of GRI 1, HTSUS and the organization of the remaining GRIs, including in particular GRI 6, HTSUS.

The reference in EN 85.43 to electro-luminescent devices is not necessarily read so broadly as to describe articles such as those at issue in this case. To the contrary, the phrase used therein, "*generally in strips, plates or panels*, and based on electro-luminescent substances . . . *placed between two layers of conductive material*," EN 85.43 (emphasis added), connotes a device that is itself more directly the source of the illumination than is one of Gerson's articles, each of which contains an LED (presumably, a device of HS heading 85.41) among various other components that together form a stand-alone, decorative and illuminating article. Consistent with the general principle expressed by the Explanatory Notes that electric lamps of HS chapter 85 are those not used independently, the class or kind of goods to which Gerson's articles belong, i.e., household furnishings such as stand-alone lamps, generally are classified under HS heading 94.05, not HS heading 85.43.

Gerson argues that classification of its goods under subheading 8543.70.70, HTSUS ("Electric luminescent lamps") would not drastically limit ("empty") the scope of heading 9405, HTSUS because the subheading is limited to electric luminescent lamps. Pl.'s Mem. of Law Rebutting Def.'s Opp'n to Pl.'s Mot. for Summ. J. and Opposing Def.'s Cross Mot. for Summ. J. 5 (Dec. 12, 2016), ECF No. 54. The flaw in this argument is Gerson's reading too much into the terms of that subheading, which are not necessarily interpreted so broadly as to encompass the independently-used goods at issue here. The placement of this U.S.-specific eight-digit subheading under a four-digit internationally-harmonized heading cannot correctly be interpreted as an intended enlargement of the scope of that heading. *See* GRIs 1, 6, HTSUS. Moreover, the court sees no indication of congressional intent to place within heading 8543, HTSUS a self-contained, independently-used, decorative household-type lamp simply because it uses an LED or other electric luminescent device as a light source. The terms of heading 8543, HTSUS create no such distinction, nor is there is an indication of a congressional intent to depart from the established HS nomenclature. Moreover, the premise underlying Gerson's argument would raise a tariff classification question as to any of a class of decorative electric lamps that are made to resemble candles and typically are designed to be fitted with a specially-shaped incandescent bulb. The implication of Gerson's argument that the classification it advocates would not empty heading 94.05 is that this similar class or kind of goods still would be classified under heading 9405, HTSUS, while Gerson's articles (which are highly similar in form and function and differ principally only in the type of light source) instead would be classified under heading 8543, HTSUS because the light source is electro-luminescent or because it is an LED. But such a distinction would not be supported by the relevant terms of the two competing

headings and would contravene the intent of the drafters of the HS as indicated by the Explanatory Notes.

In summary, for the reasons discussed above, the court concludes that by operation of GRI 1, HTSUS, Gerson's "candles" and "tea lights" are not properly classified under heading 8543, HTSUS as "[e]lectrical machines and apparatus" but instead fall within the scope of heading 9405, HTSUS as "[l]amps . . . not elsewhere specified or included." Because the correct heading for these articles is determined by operation of GRI 1, the classification issue presented does not call for consideration of the remaining GRIs.

G.  Application of GRI 6, HTSUS to Determine the Correct Subheading of the HTSUS

The first subheading within heading 9405, HTSUS is subheading 9405.10, HTSUS ("Chandeliers and other electric ceiling or wall lighting fittings . . ."), which does not describe the goods at issue. Nor does the second subheading, subheading 9405.20, HTSUS ("Electric table, desk, bedside or floor-standing lamps"), which sets forth terms applicable to lamps specially designed for these four specific placements. Instead, Gerson's articles do not fit within any of these categories of lamps and, as indicated in the catalogue illustrations, are suitable for placement on any horizontal surface (e.g., on an article of furniture or a fixture such as a shelf or fireplace mantle), in the manner of a candle. Subheading 9405.30, HTSUS is confined to "[l]ighting sets of a kind used for Christmas trees." Therefore, the correct subheading is 9405.40.80, HTSUS (applying to "Other electric lamps . . . :" not of base metal), the classification determined by Customs upon liquidation and advocated by defendant before the court.

### III. CONCLUSION

For the reasons stated above, the court will grant defendant's cross motion for summary judgment, concluding that the merchandise at issue is properly classified in subheading 9405.40.80, HTSUS ("Lamps and lighting fittings including searchlights and spotlights and parts thereof, not elsewhere specified or included; . . . : Other electric lamps and lighting fittings: Other"), subject to duty at 3.9% *ad val.*

Judgment will enter accordingly.

                                                    /s/ Timothy C. Stanceu
                                                    Timothy C. Stanceu
                                                    Chief Judge

Date:  August 2, 2017
       New York, NY